Bradley J. Luck
Kathleen L. DeSoto
Isaac M. Kantor
GARLINGTON, LOHN
  & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
bjluck@garlington.com
kldesoto@garlington.com
imkantor@garlington.com

David M. Spector (*Pro Hac Pending*)
Everett J. Cygal (*Pro Hac Pending*)
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone (312) 258-5500
Telefax (312) 258-5700
dspector@schiffhardin.com
ecygal@schiffhardin.com

Attorneys for Plaintiffs The Catholic Mutual Relief Society of America
  and The Catholic Relief Insurance Company of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| THE CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA, a Nebraska Company and CRIC INSURANCE COMPANY, a Vermont Company,<br><br>Plaintiffs,<br><br>v.<br><br>THE ROMAN CATHOLIC BISHOP OF GREAT FALLS/BILLINGS, MONTANA, a non-profit corporation; ST. LABRE INDIAN SCHOOL EDUCATIONAL ASSOCIATION, INC.; and ST. LABRE HOME FOR INDIAN CHILDREN AND YOUTH, INC.,<br><br>Defendants. | CV-_____<br><br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiffs, The Catholic Mutual Relief Society of America ("Catholic Mutual") and The Catholic Relief Insurance Company of America ("CRIC"), by their attorneys, submit their Complaint for Declaratory Judgment and state as follows:

## NATURE OF THE ACTION

1.      This is an action seeking a declaratory judgment and for other equitable relief with respect to certain rights and obligations pursuant to 28 U.S.C. §§ 2201 and 2202 as to whether, and/or what extent, certain insurance certificates provide coverage for the underlying claims of constructive trust and unjust enrichment.

## PARTIES

2.      Plaintiff Catholic Mutual is a non-profit corporation organized and existing under the laws of the State of Nebraska, with its principal place of business in the State of Nebraska. Catholic Mutual was founded in 1889 as a non-profit religious corporation. It operates as a self-insurance fund of the Catholic Church in the United States and Canada, counting 111 of the 195 United States dioceses among its members. Its Board of Trustees consists of the bishops and archbishops of 23 dioceses across the United States. Catholic Mutual issues certificates of coverage to participating members, which provide the members with coverage for certain property and casualty risks.

3. Plaintiff CRIC is an insurance company organized under the laws of the State of Vermont with its principal place of business in the State of Nebraska.

4. Defendant, The Roman Catholic Bishop of Great Falls/Billings, Montana a/k/a The Roman Catholic Diocese of Great Falls/Billings, Montana (the "Diocese"), is a non-profit corporation existing under the laws of the State of Montana, with its principal place of business in the State of Montana.

5. St. Labre Indian School Educational Association, Inc. ("St. Labre School") is a non-profit corporation organized under the laws of the State of Montana and having its principal place of business in Montana. St. Labre School is a Catholic school that offers preschool through high school education.

6. St. Labre Home for Indian Children and Youth, Inc. ("St. Labre Home") is a non-profit corporation organized under the laws of the State of Montana and having its principal place of business in Montana. St. Labre Home provides community support that includes housing to at-risk children who attend the St. Labre Indian School. St. Labre School and St. Labre Home are collectively referred to as "St. Labre."

## JURISDICTION

7. This case involves an insurance coverage dispute and the demands by the claimants in the underlying cases exceed $75,000.00, exclusive of interest and costs.

8.     This Court has jurisdiction of this case pursuant to 28 U.S.C.

§ 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of

interest and costs, and the controversy herein is between citizens of different states.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

because the Defendants are corporations subject to personal jurisdiction in this

district and, thus, reside in this district and a substantial part of the events giving

rise to this controversy occurred in this division of the district.

## GENERAL ALLEGATIONS

### The Northern Cheyenne Tribe Litigation

10.     Upon information and belief, no later than 1984, the Northern

Cheyenne Tribe, a Sovereign Indian Tribe of the United States ("NCT") put the

Defendants on notice of their claims of constructive trust and unjust enrichment.

11.     On or about June 23, 2002, the NCT filed a complaint initiating the

case styled, *The Northern Cheyenne Tribe v. The Roman Catholic Church, et al.*,

Cause No. DV 02-0636 (Mont. 13th Jud. Dist. Crt., Yellowstone Cnty.) (the "NCT

2002 Suit"), seeking, among other things, a remedy for unjust enrichment in

connection with certain alleged fund-raising activities of St. Labre.

12.     Upon information and belief, the NCT, acting through its tribal

president *pro se*, requested the dismissal of the NCT 2002 Suit without prejudice,

which was granted.

13.     Upon information and belief, the NCT and St. Labre and the Diocese participated in a series of meetings to address the NCT's alleged grievances with respect to St. Labre.

14.     On or about March 18, 2005, NCT filed a complaint initiating the case styled, *The Northern Cheyenne Tribe v. The Roman Catholic Church, et al.,* Cause No. DV 2005-0286 (Mont. 13th Jud. Dist. Crt., Yellowstone Cnty.) (the "NCT 2005 Suit").

15.     On July 26, 2005, Catholic Mutual agreed to defend the NCT 2005 Suit and reimburse the Defendants for reasonable costs and expenses related to the defense of the NCT 2005 Suit subject to a full and complete reservation of rights.

16.     The NCT amended their initial complaint on February 7, 2006, wherein the NCT brought claims for Constructive Trust (Count I); Wrongful Conversion (Count II); Unjust Enrichment from Wrongful Use of the Symbols, Culture, Faces, Plight, Needs and Requirements of the Northern Cheyenne People (Count III); Breach of Contract (Count IV); Negligent Misrepresentation (Count V); Fraud (Count VI); Estoppel (Count VII); Cultural Genocide and Violation of Constitutional Rights (Count VIII); and Forensic Accounting (Count IX).  A true and correct copy of the NCT 2005 Suit Amended Complaint ("Complaint") is attached hereto as **Exhibit A**.

17.     The Montana District Court entered Summary Judgment in favor of

the Defendants and the NCT appealed to the Montana Supreme Court. On February 5, 2013, the Montana Supreme Court reversed and remanded the District Court's decision to grant summary judgment to the Diocese and St. Labre on NCT's claim for the imposition of a constructive trust (Count I) and unjust enrichment (Count III). The Supreme Court also reversed and remanded the District Court's decision to grant summary judgment to the Diocese and St. Labre regarding St. Labre's fundraising activities before 2002. A true and correct copy of the Supreme Court's February 5, 2013 decision is attached hereto as **Exhibit B**.

<u>**The Remaining Live Allegations**</u>

18.     Upon information and belief, St. Labre began a direct mail fundraising campaign in 1952 and since then has relied almost exclusively on private fundraising. (Montana Supreme Court Decision ¶ 12 ("MSCD")).

19.     Upon information and belief, St. Labre runs its fundraising efforts through a direct mail campaign. (MSCD ¶ 13.) The Fundraising letter associated with the direct mail campaign is titled "*The Race of Sorrows*," which was a phrase coined by an army officer in the 1880s. (*Id.*)

20.     The NCT alleges that St. Labre raised millions of dollars through its fundraising efforts that market the plight and needs of the NCT. (MSCD ¶ 14.) The NCT asked the District Court to place the funds raised by St. Labre over the past half-century in an "Equitable Trust." (MSCD ¶ 23.) NCT further alleged that

St. Labre's retention of millions of dollars without paying an equitable share to the

NCT "constitutes an unjust enrichment." (*Id*.)

## Constructive Trust (Count I of the NCT 2005 Suit)

21.     With respect to the status of the constructive trust claim made by the

NCT, the Montana Supreme Court stated as follows:

(a)     "A constructive trust [] arises when a person holding title to property 'is subject to an equitable duty to convey it to another on the ground that the person holding the title would be unjustly enriched if he were permitted to retain it.'"  (MSCD ¶ 30);

(b)     "A constructive trust serves to prevent unjust enrichment. Unjust enrichment, in the context of a constructive trust, 'does not necessarily implicate the performance of a wrongful act." (MSCD ¶ 33); and

(c)     "The plaintiff, in the context of a constructive trust, need not necessarily have been deprived of something in order to recover—it is sufficient that the defendant gained something that it should not be allowed to retain."  (MSCD ¶ 38).

22.     The NCT alleges, *inter alia*:

"This enterprise has reaped enormous financial revenue and benefit to [St. Labre] during this past half-century.  For example, proceeds from the enterprise in just two of the past four years have been $27,000,000.00 and $30,000,000.00.  Obviously, tens of millions have turned into hundreds of millions of dollars which have been gathered by Defendants by marketing the [NCT] people and their 'plight' and 'needs' for some half century."  (NCT 2005 Suit ¶ 3.)

"Under the circumstances of Defendants, and each of them, conducting this enterprise for a half century, and reaping enormous monies marketing the 'plight' and 'needs', all without sharing or distributing equitably to the very people (the Tribe) used as the enterprise's vehicle, requires, in Equity, that the Court place and

consider all proceeds (money, real estate, stocks, bonds etc.) realized by Defendants over this past half century, in an Equitable Trust and, then, make and require a proper redistribution of money in Equity, to the [NCT] people, and take it from Defendants." (NCT 2005 Suit ¶ 9.)

### Unjust Enrichment (Count III of the NCT 2005 Suit)

23. With respect to the status of the unjust enrichment claim made by the

NCT, the Montana Supreme Court stated as follows:

(a) "proof of unjust enrichment entitles [the plaintiff] to restitution from the other party—regardless of any wrongdoing on the part of the unjustly enriched party." (MSCD ¶ 37);

(b) "NCT must establish the following elements to prove unjust enrichment: (1) a benefit conferred upon St. Labre by another, in this case by third-party donors moved by the plight of the NCT; (2) an appreciation or knowledge of the benefit by St. Labre; and (3) the acceptance or retention of the benefit by St. Labre under such circumstances that would make it inequitable for St. Labre to retain the benefit without payment of its value" (MSCD ¶ 39); and

(c) "NCT, as the aggrieved party, would not need to establish any wrongdoing on the part of St. Labre." (*Id.*)

24. The NCT alleges, *inter alia*:

"In spite of the repudiation, by Defendants (on repeated and continued bases, from the beginning of their enterprise and ongoing now) of their promises to equitably share monies raised by marketing the 'plight' and 'needs' of the [NCT], the Defendants continue to raise and receive tens and hundreds of millions of dollars without paying an equitable share to the [NCT]. This constitutes an unjust enrichment for Defendants which the Court must, in equity, redistribute from Defendants to the [NCT]. Such unjust enrichment is also of a punitive character, for which Defendants are liable to the [NCT]." (NCT 2005 Suit ¶ 13.)

25.     Plaintiffs have or will provide the Defendants with a copy set of the coverage forms and certificates referenced in this Complaint for Declaratory Judgment with each bearing a unique identifying number with the prefix "GFBR" along with a chart identifying the source of the forms used in compiling the liability provisions of the certificates.  Due to the volume of the material, Plaintiffs will attach hereto the declarations pages only to the Complaint for Declaratory Judgment.

### COUNT I
### DECLARATORY JUDGMENT
### (CRIC -- 1966-1969 Certificates)

26.     CRIC re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

27.     According to CRIC's records, CRIC issued 17 certificates of coverage with various effective dates in 1966 and various expiration dates in 1969 (the "1966-1969 CRIC Certificates").

| Cert # | Period | Certificate Holder(s) | Range |
|---|---|---|---|
| CGL 3278 | 04/11/1966 – 04/11/1969 | Roman Catholic Bishop of Great Falls, A Corporation Sole, and Ella Heisey Memorial Youth Center, Great Falls, Montana | GFBR000001-GFBR000009 |
| CGL 3317 | 05/21/1966 – 05/21/1969 | The Roman Catholic Bishop of Great Falls, A Corporation Sole, Limited to Sacred Heart Parish, Bidger, Montana, and Missions, St. Joseph's, Fromberg, and St. John's, Joliet, Montana | GFBR000010-GFBR000022 |

| Cert # | Period | Certificate Holder(s) | Range |
|---|---|---|---|
| CGL 3394 | 07/15/1966 – 07/15/1969 | The Roman Catholic Bishop of Great Falls, A Corporation Sole, and St. Vincent de Paul Society, 311 1st Avenue, S.W. – Great Falls, Montana | GFBR000023-GFBR000036 |
| CGL 3399 | 08/13/1966 – 08/13/1969 | Most Rev. William J. Condon D.D., The Roman Catholic Bishop of Great Falls, Montana, A Corporation Sole and Queen of the Angels Parish, Nashua, Montana | GFBR000037-GFBR000046 |
| CGL 3405 | 08/06/1966 – 08/06/1969 | Most Rev. William J. Condon D.D., The Roman Catholic Bishop of Great Falls, A Corporation Sole and St. Leo's Parish, Lewistown, Montana | GFBR000047-GFBR000062 |
| CGL 3406 | 08/15/1966 – 08/15/1968 | Most Rev. William J. Condon D.D., The Roman Catholic Bishop of Great Falls, Montana, A Corporation Sole and St. Matthew's Parish, Sidney, Montana | GFBR000063-GFBR000078 |
| CGL 3407 | 08/11/1966 – 08/11/1969 | Roman Catholic Bishop of Great Falls, Montana, A Corporation Sole and St. Mary's Church, Livingston, Montana | GFBR000079-GFBR000095 |
| CGL 3438 | 09/16/1966 – 09/16/1969 | The Roman Catholic Bishop of Great Falls, A Corporation Sole, Sacred Heart Church, P.O. Box 1016 | GFBR000096-GFBR000108 |
| CGL 3439 | 09/12/1966 – 09/12/1969 | The Roman Catholic Bishop of Great Falls, Montana, A Corporation Sole and St. Agnes Church, P.O. Box 458 – Red Lodge, Montana | GFBR000109-GFBR000120 |
| CGL 3441 | 09/13/1966 – 09/13/1969 | The Roman Catholic Bishop of Great Falls, A Corporation Sole and SS. Cyril and Methodius Church, Pompey's Pillar, Montana | GFBR000121-GFBR000131 |
| CGL 3443 | 09/11/1966 – 09/11/1969 | Most Rev. William J. Condon D.D., the Roman Catholic Bishop of Great Falls, A Corporation Sole, and St. Mary's Parish, Columbus, Montana | GFBR000132-GFBR000141 |
| CGL 3446 | 09/18/1966 – 09/18/1969 | The Roman Catholic Bishop of Great Falls, a Corporation Sole St. John's Church, Baker, Montana | GFBR000142-GFBR000152 |

| Cert # | Period | Certificate Holder(s) | Range |
|---|---|---|---|
| CGL 3452 | 09/20/1966 – 09/20/1969 | The Roman Catholic Bishop of Great Falls, A Corporation Sole and Mount Olivet and Mount Calvary Cemeteries, Great Falls, Montana | GFBR000153-GFBR000164 |
| CGL 3453 | 09/20/1966 – 09/20/1969 | The Roman Catholic Bishop of Great Falls, A Corporation Sole, Holy Cross and Calvary Cemeteries, Billings, Montana | GFBR000165-GFBR000176 |
| CGL 3455 | 09/20/1966 – 09/20/1969 | Most Rev. William J. Condon D.D., the Roman Catholic Bishop of Great Falls, A Corporation Sole, and St. Mary's Church, Malta, Montana | GFBR000177-GFBR000190 |
| CGL 3532 | 11/11/1966 – 11/11/1969 | The Roman Catholic Bishop of Great Falls, A Corporation Sole, and St. Joseph's Parish – 416 Second Avenue S.W., Great Falls, Montana | GFBR000191-GFBR000204 |
| CGL 3540 | 11/17/1966 – 11/17/1969 | The Roman Catholic Bishop of Great Falls, A Corporation Sole, and St. Ann's Cathedral Parish, Great Falls, Montana | GFBR000205-GFBR000215 |

28.     CRIC has located certain declaration pages and certain other evidence of policy coverages and limits for the CRIC 1966-1969 Certificates.  A copy of the Declarations Pages for the CRIC 1966-1969 Certificates are attached hereto as **Exhibit C (GFBR000001-GFBR000215)**.

29.     St. Labre School and St. Labre Home are not certificate holders or insureds under the CRIC 1966-1969 Certificates or any documents known to CRIC.

30.     The declaration pages and other secondary evidence of coverage do not indicate that excess/umbrella coverage was purchased during the CRIC 1966-

1969 Certificates.

31.     Although CRIC has certain declarations pages and certain other forms in use at the time, CRIC has been unable to locate complete certificate wordings for the CRIC 1966-1969 Certificates.

32.     CRIC traditionally used preprinted forms for its certificates and has located coverage forms in use by CRIC between 1966 and 1969 (the "1966-1969 CRIC Coverage Forms") (*see, e.g.,* GFBR000003-GFBR000005).

33.     The 1966-1969 CRIC Coverage Forms provide coverage for "bodily injury" and "property damage" (GFBR000003-GFBR000005) and state, *inter alia*:

> **Coverage A—Bodily Injury Liability:**  To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

> **Coverage B—Property Damage Liability:**  To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

34.     By way of endorsement (*see, e.g.,* GFBR000009), the term "personal injury" was substituted for the term "bodily injury" and "occurrence" was substituted for "accident."

35.     Pursuant to the Montana Supreme Court decision, the surviving allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment and do not allege personal injury, sickness or disease, including death or property

damage.

36.     CRIC has no duty under the 1966-1969 CRIC Certificates to defend or indemnify the St. Labre School nor St. Labre Home in the NCT 2005 Suit, because neither St. Labre School nor St. Labre Home are insureds and are not entitled to coverage under the 1966-1969 Certificates.

37.     CRIC has no duty under the 1966-1969 CRIC Certificates to defend or indemnify the Diocese in the NCT 2005 Suit, because the 1966-1969 CRIC Certificates do not provide coverage to the Diocese for acts not arising from or relating to the operations of the parish and/or locations identified in the 1966-1969 CRIC Certificates.

38.     CRIC has no duty under the 1966-1969 CRIC Certificates to defend or indemnify St. Labre School, St. Labre Home, and the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute personal injury, or property damage occurring during the coverage period of the 1966-1969 CRIC Certificates.

39.     There is an actual, real and substantial controversy of a justiciable nature now existing between CRIC and St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

40.     By order and decree herein, all rights and legal relations of the parties

hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

## COUNT II
## DECLARATORY JUDGMENT
### (Catholic Mutual -- 1974-1975 St. Pius X Certificate)

41.    Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

42.    Catholic Mutual has been unable to locate certificate wordings or a declarations page apparently covering the parish of St. Pius X for the apparent period of March 1, 1974 through March 1, 1975 (the "1974-1975 St. Pius X Certificate") (GFBR000216-GFBR000219).

43.    Catholic Mutual traditionally used preprinted forms for its certificates and has located coverage forms in use by Catholic Mutual between 1974 through 1975 (the "1974-1975 Catholic Mutual Forms") (GFBR000217-GFBR000219).

44.    The 1974-1975 Catholic Mutual Forms provide coverage for "bodily injury" and "property damage" (GFBR000219) and state, *inter alia*:

> The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>
> **A. bodily injury or**
>
> **B. property damage**
>
> to which this Insurance applies, caused by an occurrence . . .
>
> **Exclusions**
>
> This Insurance does not apply:

. . .

(k)    to **property damage** to . . .

       (3) property in the care, custody or control of the Insured . . . .

45.    Pursuant to the Montana Supreme Court decision, the surviving allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment and do not allege bodily injury, sickness or disease, including death or property damage.

46.    Catholic Mutual has no duty under the 1974-1975 St. Pius X Certificate to defend or indemnify the St. Labre School nor St. Labre Home in the NCT 2005 Suit, because neither St. Labre School nor St. Labre Home are insureds and are not entitled to coverage under the 1974-1975 St. Pius X Certificate.

47.    Catholic Mutual has no duty under the 1974-1975 St. Pius X Certificate to defend or indemnify the Diocese in the NCT 2005 Suit, because the 1974-1975 St. Pius X Certificate does not provide coverage to the Diocese for acts not arising from or relating to the operations of the parish and/or locations identified in the 1974-1975 St. Pius X Certificate.

48.    Catholic Mutual has no duty under the 1974-1975 St. Pius X Certificate to defend or indemnify St. Labre School, St. Labre Home, and the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute bodily injury, or property damage occurring during the coverage period of the 1974-1975 St. Pius X Certificate.

49.     There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual and St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

50.     By order and decree herein, all rights and legal relations of the parties hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

**COUNT III**
**DECLARATORY JUDGMENT**
**(Catholic Mutual -- 1975-1978 Certificate)**

51.     Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

52.     Catholic Mutual has located a declarations page for the period March 1, 1975 to March 1, 1978 issued to the Roman Catholic Bishop of Great Falls, A Corporation Sole, Great Falls, Montana (the "1975-1978 Certificate").  A copy of the Declarations Page for the 1975-1978 Certificate is attached hereto as **Exhibit D (GFBR000220)**.

53.     Catholic Mutual has been unable to locate certificate wordings in connection with the 1975-1978 Certificate.

54.     Catholic Mutual traditionally used preprinted forms for its certificates and has located coverage forms in use by Catholic Mutual between 1975 through

1978 (the "1975-1978 Catholic Mutual Forms") (GFBR000221-GFBR000230).

55. The 1975-1978 Catholic Mutual Forms provide coverage for "bodily

injury" and "property damage" (GFBR000223) and state, *inter alia*:

> The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

> **A. bodily injury or**

> **B. property damage**

> to which this Insurance applies, caused by an occurrence . . . .

> **Exclusions**

> This Insurance does not apply:

> . . .

> (k)    to **property damage** to . . .

> (3) property in the care, custody or control of the Insured . . . .

56. The Umbrella Excess form in use during 1975 through 1978

(GFBR000224) states, *inter alia:*

> The Company will indemnify the Insured for all sums which the Insured shall be legally obligated to pay as damages, all as more fully defined by the term "ultimate net loss" on account of:

> 1.    Personal Injuries,

> 2.    Property Damage,

> 3.    Advertising Offense,

> to which this Policy applies, caused by an occurrence.

57. The Umbrella Excess form in use during 1975 through 1978

(GFBR000227-GFBR000228) contains the following definitions:

> 1.    ADVERTISING OFFENSE

The term "Advertising Offense" wherever used herein shall mean:

(1)    Libel, slander or defamation;

(2)    Any infringement of copyright or of title or of slogan;

(3)    Piracy or unfair competition or idea misappropriation under an implied contract;

(4)    Any invasion of right of privacy;

committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's Advertising activities.

. . .

4.     DAMAGES

The term "Damages" includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

. . .

9.     PERSONAL INJURIES

The term "Personal Injuries", wherever used herein means bodily injury, mental injury, mental anguish, shock, sickness, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, (unless coverage therefor is prohibited by law), humiliation; also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any Advertising activities.

. . .

11.    PROPERTY DAMAGE

The term "Property Damage" means injury to or destruction of tangible property.

58.    Pursuant to the Montana Supreme Court decision, the surviving allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment and do not allege bodily injury, sickness or disease, including death; property

damage; or "personal injuries" or "advertising offense" as defined in the Umbrella Excess form.

59.     Catholic Mutual has no duty under the 1975-1978 Certificate to defend or indemnify St. Labre School, St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute bodily injury, personal injury or property damage occurring during the coverage period of the 1975-1978 Certificate.

60.     Catholic Mutual has no duty under the 1975-1978 Excess Umbrella form to defend or indemnify St. Labre School, St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute "personal injuries," "property damages" or "advertising offense" occurring during the coverage period of the 1975-1978 Certificate.

61.     To the extent that it is found that the NCT 2005 Suit alleges "personal injuries" as defined in the Umbrella Excess form, coverage is excluded because the alleged "personal injuries" arose out of "advertising activities."

62.     There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual, St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

63.     By order and decree herein, all rights and legal relations of the parties

hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(Catholic Mutual -- 1978-1982 Certificates)**

64.     Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

65.     Catholic Mutual has located declarations pages and certain endorsements for the period March 1, 1978 to July 1, 1983 issued to the Roman Catholic Bishop of Great Falls, A Corporation Sole, Great Falls, Montana (the "1978-1983 Certificates") (GFBR000231-GFBR000262; GFBR000263-GFBR000301).  Copies of the Declarations Pages for the 1978-1983 Certificates are attached hereto as **Exhibit E (GFBR000231; GFBR000263)**.

66.     Catholic Mutual has been unable to locate complete certificate wordings in connection with the 1978-1983 Certificates.

67.     Catholic Mutual traditionally used preprinted forms for its certificates and has located coverage forms in use by Catholic Mutual between 1978 through 1983 (the "1978-1983 Catholic Mutual Forms") (*see, e.g.,* GFBR000236-GFBR000262).

68.     The 1978-1983 Catholic Mutual Forms provide coverage for "bodily injury" and "property damage" (GFBR000241; GFBR000279) and state, *inter alia*:

I.    COVERAGE C-BODILY INJURY AND
      PROPERTY DAMAGE LIABILITY:

The Company will pay on behalf of the insured all sums which
the insured shall become legally obligated to pay as damages because
of bodily injury or property damage to which this insurance applies,
caused by an occurrence . . . the Company shall have the right and
duty to defend any suit against the insured seeking damages on
account of such bodily injury or property damage . . . .

69.    The 1978-1983 Catholic Mutual Forms contain a Personal Injury

Liability Insurance Endorsement (GFBR000252-GFBR000253; GFBR000286-

GFBR000287) that states, *inter alia*:

I.    COVERAGE — PERSONAL INJURY LIABILITY

The Company will pay on behalf of the insured all sums which
the insured shall become legally obligated to pay as a damages
because of injury (herein called "personal injury") sustained by any
person or organization and arising out of one or more of the following
offenses:

Group A    false arrest, detention or imprisonment, or
           malicious prosecution;

Group B    the publication or utterance of a libel or slander or
           of other defamatory or disparaging material, or a
           publication or utterance in violation of an
           individual's right of privacy; except publications or
           utterances in the course of or related to advertising,
           broadcasting or telecasting activities conducted by
           or on behalf of the named insured;

Group C    wrongful entry or eviction, or other invasion of the
           right of private occupancy.

70.    The 1978-1983 Catholic Mutual Forms contain certain exclusions

with respect to Personal Injury (GFBR000253; GFBR000287):

Exclusions

This insurance does not apply:

. . .

(d)     to personal injury arising out of any publication or utterance
        described in Group B, if the first injurious publications or
        utterance of the same or similar material by or on behalf of the
        named insured was made prior to the effective date of this
        insurance.

71.     The Umbrella Excess form in use during 1978-1983 provides the

following coverage (GFBR000258-GFBR000262; GFBR000296-GFBR000300):

The Society will indemnify the Named Entity for all sums which the
Named Entity shall be legally obligated to pay as damages, all as
more fully defined by the term "ultimate net loss" on account of:

    1.     Personal Injuries,

    2.     Property Damage,

    3.     Advertising Offense,

to which this Certificate applies, caused by an occurrence.

72.     The Umbrella Excess form in use during 1978-1983 contains the

following definitions (GFBR000260; GFBR000298):

1.     ADVERTISING OFFENSE
        The term "Advertising Offense" wherever used herein shall
        mean:
        (1)     Libel, slander or defamation;
        (2)     Any infringement of copyright or of title or of slogan;
        (3)     Piracy or unfair competition or idea misappropriation
        under an implied contract;
        (4)     Any invasion of right of privacy;
        committed or alleged to have been committed in any
        advertisement, publicity article, broadcast or telecast and
        arising out of the Named Entity's Advertising activities.

. . .

4.  DAMAGES
    The term "Damages" includes damages for death and for care
    and loss of services resulting from personal injury and damages
    for loss of use of property resulting from property damage.

. . .

8.  PERSONAL INJURIES
    The term "Personal Injuries" wherever used herein means
    bodily injury, mental injury, mental anguish, shock, sickness,
    disability, false arrest, false imprisonment, wrongful eviction,
    detention, malicious prosecution, discrimination, (unless
    coverage therefor is prohibited by law), humiliation, also libel,
    slander or defamation of character or invasion of rights of
    privacy, except that which arises out of any Advertising
    activities.

. . .

10. PROPERTY DAMAGE
    The term "Property Damage" means injury to or destruction of
    tangible property.

73.  Pursuant to the Montana Supreme Court decision, the surviving

allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment

and do not allege bodily injury, sickness or disease, including death; property

damage, or personal injury; or "personal injuries," "property damage," or

"advertising offense" as defined in the Umbrella Excess form.

74.  Catholic Mutual has no duty under the 1978-1983 Certificates to

defend or indemnify the St. Labre School, the St. Labre Home or the Diocese in

the NCT 2005 Suit, because the surviving allegations of the Complaint, even if

true, do not constitute bodily injury, personal injury or property damage occurring during the coverage period of the 1978-1983 Certificates.

75.     Catholic Mutual has no duty under the 1978-1983 Excess Umbrella form to defend or indemnify St. Labre School, St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute "personal injuries," "property damage," or "advertising offense" occurring during the coverage period of the 1978-1983 Certificates.

76.     To the extent that it is found that the NCT 2005 Suit alleges "personal injury" as defined in the Umbrella Excess form, coverage is excluded because the alleged "personal injury" was made in the course of or related to advertising.

77.     To the extent that it is found that the NCT 2005 Suit alleges "personal injuries" as defined in either the 1978-1983 Certificates, coverage is excluded because the alleged first injurious publication or utterance of the same or similar material was made prior to the effective date of the 1978-1983 Certificates.

78.     There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual, St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

79.     By order and decree herein, all rights and legal relations of the parties hereto should be immediately, definitely, and judicially determined, adjudicated

and declared.

## COUNT V
## DECLARATORY JUDGMENT
### (Catholic Mutual -- 1982-1985 Certificate)

80.     Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

81.     Catholic Mutual has located declarations pages and certain endorsements and certificate forms for the period July 1, 1982 to July 1, 1985 issued to the Roman Catholic Bishop of Great Falls, A Corporation Sole, Great Falls, Montana (the "1982-1985 Certificate") (GFBR000302-GFBR000347).  A copy of the Declarations Page for the 1982-1985 Certificate is attached hereto as **Exhibit F (GFBR000302)**.

82.     Upon information and belief, it appears that, for the period July 1, 1982 through July 1, 1985, Catholic Mutual issued Directors' and Officers' Liability coverage although Catholic Mutual has not found any evidence that it was purchased by any of the Defendants.

83.     The 1982-1985 Certificate provides coverage for "bodily injury" and "property damage" (GFBR000325) and states, *inter alia*:

BODILY INJURY LIABILITY
PROPERTY DAMAGE LIABILITY

1.      The Society will pay on behalf of the assured all sums which the assured shall become legally obligated to pay as damages because of

> bodily injury or
>
> property damage
>
> to which this coverage applies, caused by an occurrence . . . the Society shall have the right and duty to defend any suit against the assured seeking damages on account of such bodily injury or property damage . . . .

84.     The 1982-1985 Certificate contains a Personal Injury Liability

Insurance Endorsement (GFBR000328) that states, *inter alia*:

> I.      COVERAGE — PERSONAL INJURY LIABILITY
>
> The Society will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the Assured's business:
>
> > Group A -  false arrest, detention or imprisonment, or malicious prosecution;
> >
> > Group B -  the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Assured;
> >
> > Group C -  wrongful entry or eviction, or other invasion of the right of private occupancy;

85.     The 1982-1985 Coverage Form contains certain exclusions with

respect to Personal Injury (GFBR000328):

> Exclusions
>
> This coverage does not apply:

. . .

(d)    to personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the Assured was made prior to the effective date of this coverage;

86.    The Umbrella Excess form (GFBR000338) states, *inter alia*:

I.    COVERAGE

The Society will indemnify the Assured for all sums which the Assured shall be legally obligated to pay as damages, all as more fully defined by the term "ultimate net loss" on account of:

1.    Personal Injuries,

2.    Property Damage,

3.    Advertising Offense,

to which this Certificate applies, caused by an occurrence.

87.    The Umbrella Excess form contains the following definitions

(GFBR000340):

1.    ADVERTISING OFFENSE
The term "Advertising Offense" wherever used herein shall mean:
(1)    Libel, slander or defamation;
(2)    Any infringement of copyright or of title or of slogan;
(3)    Piracy or unfair competition or idea misappropriation under an implied contract;
(4)    Any invasion of right of privacy;
committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Assured's Advertising activities.

. . .

4.    DAMAGES
The term "Damages" includes damages for death and for care and loss of services resulting from personal injury and damages

for loss of use of property resulting from property damage.

. . .

8.    PERSONAL INJURIES
      The term "Personal Injuries" wherever used herein means bodily
      injury, mental injury, mental anguish, shock, sickness, disability,
      false arrest, false imprisonment, wrongful eviction, detention,
      malicious prosecution, discrimination, (unless coverage therefor
      is prohibited by law), humiliation; also libel, slander or
      defamation of character or invasion of rights of privacy, except
      that which arises out of any Advertising activities.

. . .

10.   PROPERTY DAMAGE
      The term "Property Damage" means injury to or destruction of
      tangible property.

88.   Directors' and Officers' form (GFBR000333) for the period July 1,

1982 through July 1, 1985 provides certain coverage on a claims made basis and

states, *inter alia*:

1.    COVERAGE CLAUSE

      This certificate shall, subject to its terms, conditions and
      limitations hereinafter provided, pay on behalf of each and
      every person who was or now is or may hereafter be a Director
      or Officer of the Company named in Item 1 of the Declarations
      . . . against loss . . . arising from any claim or claims which may
      be made against the Assureds, jointly or severally, during the
      Certificate period . . . in their respective capacities of Directors
      or Officers.

2.    DEFINITIONS

      (a)    The term "Director or Officer" shall mean:

(i) Any duly elected Director or duly elected or appointed Officer of the Company named in Item 1 of the Declarations . . . .

(c)     The term "Loss" shall mean any amount which the Assureds are legally obligated to pay for a claim or claims made against them for Wrongful Acts . . . .

(d)     The term "Wrongful Act" shall mean any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted by the Assureds . . . .

89.     Pursuant to the Montana Supreme Court decision, the surviving allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment and do not allege bodily injury, sickness or disease, including death; property damage, or personal injury; or "personal injuries," "property damage," or "advertising offense" as defined in the Umbrella Excess form.

90.     Catholic Mutual has no duty under the 1982-1985 Certificate to defend or indemnify the St. Labre School, the St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute bodily injury, personal injury or property damage occurring during the coverage period of the 1982-1985 Certificate.

91.     Catholic Mutual has no duty under the 1982-1985 Excess Umbrella form to defend or indemnify St. Labre School, St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute "personal injuries," "property damage," or "advertising

offense" occurring during the coverage period of the 1982-1985 Certificate.

92.     To the extent that it is found that the NCT 2005 Suit alleges "personal injury" as defined in the Umbrella Excess form, coverage is excluded because the alleged "personal injury" was made in the course of or related to advertising.

93.     To the extent that it is found that the NCT 2005 Suit alleges "personal injuries" as defined in either the 1982-1985 Certificate, coverage is excluded because the alleged first injurious publication or utterance of the same or similar material was made prior to the effective date of the 1982-1985 Certificate.

94.     The 1982-1985 Directors' and Officers' Liability coverage protects persons who are officers and directors who commit a "wrongful act" and only for claims made during the Certificate period.

95.     The Montana Supreme Court has held "NCT, as the aggrieved party, would not need to establish any wrongdoing" to prevail on its unjust enrichment. (MSCD ¶ 39.)

96.     There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the St. Labre School, the St. Labre Home, or the Diocese because the allegations of the NCT 2005 Suit do not arise from any claim or claims which were made during the Certificate period and the NCT 2005 Suit does not name nor seek any relief against any person who is covered under the Directors' and Officers' Liability Coverage

who is alleged to have committed a "wrongful act."

97.     There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual, St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

98.     By order and decree herein, all rights and legal relations of the parties hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

**COUNT VI**
**DECLARATORY JUDGMENT**
**(Catholic Mutual -- 1985-1988 Certificates)**

99.     Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

100.    Catholic Mutual has located declarations pages and certain endorsements and certificate forms for the period July 1, 1985 to July 1, 1988 issued to the Roman Catholic Bishop of Great Falls, A Corporation Sole, Great Falls, Montana (the "1985-1988 Certificates") (GFBR000348-GFBR000405; GFBR000406-GFBR000486; GFBR000487-GFBR000555).  Copies of the Declaration Pages for the 1985-1988 Certificates are attached hereto as **Exhibit G (GFBR000348; GFBR000406; GFBR000487)**.

101.    Upon information and belief, for the period July 1, 1985 through July

1, 1988, Catholic Mutual issued Directors' and Officers' Liability coverage.

102.    The 1985-1988 Certificates provide coverage for "bodily injury" and "property damage" (GFBR000376; GFBR000435; GFBR000514) and state, *inter alia*:

> BODILY INJURY LIABILITY
> PROPERTY DAMAGE LIABILITY
>
> 1.    The Society will pay on behalf of the assured all sums which the assured shall become legally obligated to pay as damages because of
>
>> bodily injury or
>>
>> property damage
>
> to which this coverage applies, caused by an occurrence . . . the Society shall have the right and duty to defend any suit against the assured seeking damages on account of such bodily injury or property damage . . . .

103.    The 1985-1988 Certificates contain a Personal Injury Liability Insurance Endorsement (GFBR000379; GFBR000439; GFBR000518) that states, *inter alia*:

> I.    COVERAGE — PERSONAL INJURY LIABILITY
>
> The Society will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as a damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the Assured's business:
>
>> Group A -    false arrest, detention or imprisonment, or malicious prosecution;
>>
>> Group B -    the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a

publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Assured;

Group C -  wrongful entry or eviction, or other invasion of the right of private occupancy;

104.   The 1985-1988 Coverage Form contains certain exclusions with respect to Personal Injury (GFBR000379; GFBR000439; GFBR000518):

Exclusions

This coverage does not apply:

. . .

(d)      to personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the Assured was made prior to the effective date of this coverage;

105.   The Umbrella Excess form (GFBR000396; GFBR000465; GFBR000543) states, *inter alia*:

I.      COVERAGE

The Society will indemnify the Assured for all sums which the Assured shall be legally obligated to pay as damages, all as more fully defined by the term "ultimate net loss" on account of:

1.      Personal Injuries,

2.      Property Damage,

3.      Advertising Offense,

to which this Certificate applies, caused by an occurrence.

106.   The Umbrella Excess form contains the following definitions (GFBR000398; GFBR000467; GFBR000545):

1.   ADVERTISING OFFENSE
     The term "Advertising Offense" wherever used herein shall
     mean:
     (1)   Libel, slander or defamation;
     (2)   Any infringement of copyright or of title or of slogan;
     (3)   Piracy or unfair competition or idea misappropriation
     under an implied contract;
     (4)   Any invasion of right of privacy;
     committed or alleged to have been committed in any
     advertisement, publicity article, broadcast or telecast and
     arising out of the Assured's Advertising activities.

. . .

4.   DAMAGES
     The term "Damages" includes damages for death and for care
     and loss of services resulting from personal injury and damages
     for loss of use of property resulting from property damage.

. . .

8.   PERSONAL INJURIES
     The term "Personal Injuries" wherever used herein means
     bodily injury, mental injury, mental anguish, shock, sickness,
     disability, false arrest, false imprisonment, wrongful eviction,
     detention, malicious prosecution, discrimination, (unless
     coverage therefor is prohibited by law), humiliation; also libel,
     slander or defamation of character or invasion of rights of
     privacy, except that which arises out of any Advertising
     activities.

. . .

10.   PROPERTY DAMAGE
      The term "Property Damage" means injury to or destruction of
      tangible property.

107.   Directors' and Officers' form (GFBR000387) for the period July 1,

1985 through July 1, 1986 provides certain coverage on a claims made basis and

states, *inter alia*:

4.      Coverage Clause

In consideration of the charges made and to be made to the Society by the Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, the Society shall pay on behalf of the person or persons, herein individually and collectively referred to as the "Protected Party," against Loss, as hereinafter defined, arising from any claim or claims which may be made against the Protected Party, jointly or severally, during a Certificate Year by reason of any Protected Act, as hereinafter defined, performed or omitted solely in their respective management capacities.

5.      Definitions

A.      The term "Protected Party" shall mean any person serving in the capacity of a Director, Officer, Trustee, Board Member, or Administrator of any official Diocesan Board, Committee, or Council, whether or not such Board, Committee, or Council operates on a full Diocesan wide basis, parish basis, institutional basis, or educational unit basis, all duly created by and under the direct control of the Ordinary of the Diocese.

. . .

C.      The term "Loss" shall mean any amount which a Protected Party is legally obligated to pay for a claim or claims made against the same during a Certificate Year by reason of a Protected Act . . . .

D.      The term "Protected Act" shall mean a negligent act or omission constituting a breach of fiduciary or other managerial duty or a negligent misleading statement done, omitted or wrongfully attempted by a Protected Party solely in his or her respective capacity.

108.    Directors' and Officers' form (GFBR000447; GFBR000524) for the

period July 1, 1986 through July 1, 1988 provides certain coverage on a claims made basis and states, *inter alia*:

4. Coverage Clause

   In consideration of the charges made and to be made to the Society by the Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, the Society shall pay on behalf of the person or persons, herein individually and collectively referred to as the "Protected Party," against Loss, as hereinafter defined, arising from any claim or claims which may be made against the Protected Party, jointly or severally, during a Certificate Year by reason of any Protected Act, as hereinafter defined, performed or omitted solely in their respective management capacities.

5. Definitions

   A. The term "Protected Party" shall mean any person serving in the capacity of a Director, Officer, Trustee, Board Member, or Administrator of any official Diocesan Board, Committee, or Council, whether or not such Board, Committee, or Council operates on a full Diocesan wide basis, parish basis, institutional basis, or educational unit basis, all duly created by and under the direct control of the Ordinary of the Diocese.

   . . .

   C. The term "Loss" shall mean any amount which a Protected Party is legally obligated to pay for a claim or claims made against the same during a Certificate Year by reason of a Protected Act . . . .

   D. The term "Protected Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Entity, jointly or

> severally, or any matter claimed against them solely by
> reason of their being Directors or Officers of the Entity.

109.    Pursuant to the Montana Supreme Court decision, the surviving allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment and do not allege bodily injury, sickness or disease, including death; property damage, or personal injury; or "personal injuries," "property damage," or "advertising offense" as defined in the Umbrella Excess form.

110.    Catholic Mutual has no duty under the 1985-1988 Certificates to defend or indemnify the St. Labre School, the St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute bodily injury, personal injury or property damage occurring during the coverage period of the 1985-1988 Certificates.

111.    Catholic Mutual has no duty under the 1985-1988 Excess Umbrella form to defend or indemnify St. Labre School, St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute "personal injuries," "property damage," or "advertising offense" occurring during the coverage period of the 1985-1988 Certificates.

112.    To the extent that it is found that the NCT 2005 Suit alleges "personal injury" as defined in the Umbrella Excess form, coverage is excluded because the alleged "personal injury" was made in the course of or related to advertising.

113.    To the extent that it is found that the NCT 2005 Suit alleges "personal

injuries" as defined in either the 1985-1988 Certificates, coverage is excluded because the first injurious publication or utterance of the same or similar material was made prior to the effective date of the 1985-1988 Certificates.

114.    The 1985-1988 Directors' and Officers' Liability coverage protects persons who are officers and directors who commit a "Protected Act" and only for claims made during the Certificate period.

115.    The Montana Supreme Court has held "NCT, as the aggrieved party, would not need to establish any wrongdoing" to prevail on its unjust enrichment. (MSCD ¶ 39.)

116.    There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the St. Labre School, the St. Labre Home, or the Diocese because the allegations of the NCT 2005 Suit do not arise from any claim or claims which were made during the Certificate period and the NCT 2005 Suit does not name nor seek any relief against any person who is covered under the Directors' and Officers' Liability Coverage who is alleged to have committed a "Protected Act."

117.    There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual, St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

118.   By order and decree herein, all rights and legal relations of the parties

hereto should be immediately, definitely, and judicially determined, adjudicated

and declared.

## COUNT VII
## DECLARATORY JUDGMENT
### (Catholic Mutual -- 1988-1989 Certificate)

119.   Catholic Mutual re-alleges and incorporates by reference all preceding

paragraphs as if set forth fully herein.

120.   Catholic Mutual has located declarations pages and certain

endorsements and certificate forms for the period July 1, 1988 to July 1, 1989

issued to the Roman Catholic Bishop of Great Falls, A Corporation Sole, Great

Falls, Montana (the "1988-1989 Certificate") (GFBR000556-GFBR000597).  A

copy of the Declarations Page for the 1988-1989 Certificate is attached hereto as

**Exhibit H (GFBR000556)**.

121.   The 1988-1989 Certificate provides coverage for "bodily Injury" and

"property damage" (GFBR000567) and states, *inter alia*:

BODILY INJURY LIABILITY
PROPERTY DAMAGE LIABILITY
1.      The Society will pay on behalf of the assured all sums which
the assured shall become legally obligated to pay as damages because
of
         bodily injury or
         property damage
to which this coverage applies, caused by an occurrence . . . the

Society shall have the right and duty to defend any suit against the assured seeking damages on account of such bodily injury or property damage . . . .

122.  The 1988-1989 Certificate contains a Broad Form Comprehensive

Liability Endorsement (GFBR000570-GFBR000573) that states, *inter alia*:

II.      PERSONAL INJURY AND ADVERTISING INJURY
         LIABILITY COVERAGE

(A) The Society will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this coverage applies; sustained by any person or organization and arising out of the conduct of the Named Assured's business, within the certificate territory . . . .

(B) This coverage does not apply:

. . .

         (3)      to personal injury or advertising injury arising out of a
         publication or utterance of a libel or slander, or a publication or
         utterance in violation of an individual's right of privacy, if the
         first injurious publication or utterance of the same or similar
         material by or on behalf of the Named Assured was made prior
         to the effective date of this coverage;

. . .

(D) Additional Definitions

                  "Advertising Injury" means injury arising out of an
                  offense committed during the certificate period occurring
                  in the course of the Named Assured's advertising
                  activities, if such injury arises out of libel, slander,
                  defamation, violation of right of privacy, piracy, unfair
                  competition, or infringement of copyright, title or slogan.

                  "Personal Injury" means injury arising out of one or more

of the following offenses, committed during the certificate period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

(3) a publication or utterance

(a) of a libel or slander or of other defamatory or disparaging material, or

(b) in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the Named Assured shall not be deemed personal injury.

123. The Umbrella Excess form (GFBR000590-GFBR000594) states, *inter alia*:

I.     COVERAGE

The Society will indemnify the Assured for all sums which the Assured shall be legally obligated to pay as damages, all as more fully defined by the term "ultimate net loss" on account of:

1.     Personal Injuries,

2.     Property Damage,

3.     Advertising Offense,

to which this Certificate applies, caused by an occurrence.

124. The Umbrella Excess form contains the following definitions (GFBR000592):

1.   ADVERTISING OFFENSE
     The term "Advertising Offense" wherever used herein shall
     mean:
     (1)   Libel, slander or defamation;
     (2)   Any infringement of copyright or of title or of slogan;
     (3)   Piracy or unfair competition or idea misappropriation
     under an implied contract;
     (4)   Any invasion of right of privacy;
     committed or alleged to have been committed in any
     advertisement, publicity article, broadcast or telecast and
     arising out of the Assured's Advertising activities.

. . .

4.   DAMAGES
     The term "Damages" includes damages for death and for care
     and loss of services resulting from personal injury and damages
     for loss of use of property resulting from property damage.

. . .

8.   PERSONAL INJURIES
     The term "Personal Injuries" wherever used herein means
     bodily injury, mental injury, mental anguish, shock, sickness,
     disability, false arrest, false imprisonment, wrongful eviction,
     detention, malicious prosecution, discrimination, (unless
     coverage therefor is prohibited by law), humiliation; also libel,
     slander or defamation of character or invasion of rights of
     privacy, except that which arises out of any Advertising
     activities.

. . .

10.   PROPERTY DAMAGE
      The term "Property Damage" means injury to or destruction of
      tangible property.

125.   The Directors' and Officers' form in use during the 1988-1989

Certificate Period (GFBR000577-GFBR000580) provides certain coverage on a

claims made basis and states, *inter alia*:

4.    Coverage Clause

In consideration of the charges made and to be made to the Society by the Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, the Society shall pay on behalf of the person or persons, herein individually and collectively referred to as the "Protected Party," against Loss, as hereinafter defined, arising from any claim or claims which may be made against the Protected Party, jointly or severally, during a Certificate Year by reason of any Protected Act, as hereinafter defined, performed or omitted solely in their respective management capacities.

5.    Definitions

A.    The term "Protected Party" shall mean any person serving in the capacity of a Director, Officer, Trustee, Board Member, or Administrator of any official Diocesan Board, Committee, or Council, whether or not such Board, Committee, or Council operates on a full Diocesan wide basis, parish basis, institutional basis, or educational unit basis, all duly created by and under the direct control of the Ordinary of the Diocese.

. . .

C.    The term "Loss" shall mean any amount which a Protected Party is legally obligated to pay for a claim or claims made against the same during a Certificate Year by reason of a Protected Act . . . .

D.    The term "Protected Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Entity, jointly or severally, or any matter claimed against them solely by reason of their being Directors or Officers of the Entity.

126. Pursuant to the Montana Supreme Court decision, the surviving allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment and do not allege bodily injury, sickness or disease, including death; property damage, or personal injury; or "personal injuries," "property damage," or "advertising offense" as defined in the Umbrella Excess form.

127. Catholic Mutual has no duty under the 1988-1989 Certificate to defend or indemnify the St. Labre School, the St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute bodily injury, personal injury, advertising injury or property damage occurring during the coverage period of the 1988-1989 Certificate.

128. Catholic Mutual has no duty under the 1988-1989 Excess Umbrella form to defend or indemnify St. Labre School, St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute "personal injuries," "property damage," or "advertising offense" occurring during the coverage period of the 1988-1989 Certificate.

129. To the extent that it is found that the NCT 2005 Suit alleges "personal injury" as defined in the Umbrella Excess form, coverage is excluded because the alleged "personal injury" was made in the course of or related to advertising.

130. To the extent that it is found that the NCT 2005 Suit alleges "personal injury" as defined in either the 1988-1989 Certificate, coverage is excluded

because the alleged first injurious publication or utterance of the same or similar material was made prior to the effective date of the 1988-1989 Certificate.

131.    The 1988-1989 Directors' and Officers' Liability coverage protects persons who are officers and directors who commit a "Protected Act" and only for claims made during the Certificate period.

132.    The Montana Supreme Court has held "NCT, as the aggrieved party, would not need to establish any wrongdoing" to prevail on its unjust enrichment. (MSCD ¶ 39.)

133.    There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the St. Labre School, the St. Labre Home, or the Diocese because the allegations of the NCT 2005 Suit do not arise from any claim or claims which were made during the Certificate period and the NCT 2005 Suit does not name nor seek any relief against any person who is covered under the Directors' and Officers' Liability Coverage who is alleged to have committed a "Protected Act" in the NCT 2005 Suit.

134.    There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual, St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

135.    By order and decree herein, all rights and legal relations of the parties

hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

## COUNT VIII
## DECLARATORY JUDGMENT
### (Catholic Mutual -- 1989-1991 Certificates)

136.   Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

137.   Catholic Mutual has located declarations pages and certain endorsements and certificate forms for the period July 1, 1989 to July 1, 1991 issued to the Roman Catholic Bishop of Great Falls, A Corporation Sole, Great Falls, Montana (the "1989-1991 Certificates") (GFBR000598-GFBR000695; GFBR000696-GFBR000799).  Copies of the Declaration Pages for the 1989-1991 Certificates are attached hereto as **Exhibit I (GFBR000598-GFBR000599; GFBR000696-GFBR000697)**.

138.   The 1989-1991 Certificates provide coverage for "bodily injury," "advertising injury," and "property damage" (GFBR000668; GFBR000734) and state, *inter alia*:

COVERAGE D – GENERAL LIABILITY

We shall pay all sums which you may become legally obligated to pay as damages arising out of an occurrence resulting in:

1.      Bodily Injury, Personal Injury (including Corporal Punishment)

2.      Advertising Injury

3.    Property Damage

We shall pay up to the Limit of Liability for any one occurrence to which this coverage applies.

139.  The 1989-1991 Certificates contain the following definitions

(GFBR000649-GFBR000653; GFBR000715-GFBR000719):

DEFINITIONS

Advertising Injury – means injury arising out of your advertising activities caused by libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation, and invasion of right of privacy.

Bodily Injury – means physical injury to, sickness or disease sustained by the body of any person, including death at any time resulting from bodily injury. Injury must occur during the certificate period.

Personal Injury - means injury arising out of the following acts if first committed during the certificate period:

1. False arrest, detention, discrimination, false imprisonment or malicious prosecution.

2. Wrongful entry or eviction or other invasion of the right of private occupancy of an occupant.

3. A written or spoken statement injuring a person's reputation or other defamatory written or spoken statements that violate a person's right of privacy.

4. Acts resulting in mental injury, mental anguish, shock, sickness, disability, discrimination and humiliation.

5. Corporal Punishment.

140.  The 1989-1990 Certificate contains the following exclusions

(GFBR000668-GFBR000673):

EXCLUSIONS

We do not cover Bodily Injury or Property Damage:

. . .

6. Resulting from any obligation we or you may be held liable for by a person not a party to a contract or agreement.

. . .

We do not cover <u>Property Damage</u>:

. . .

3. For loss in excess of $100,000 to property in the care, custody or control of a Protected Person(s) or as to which a Protected Person(s) is for any purpose exercising physical control.

We do not pay for any damages caused by any of the following Personal Injury:

. . .

2. A written or spoken statement that is first made prior to the effective date of this certificate.

141. The 1990-1991 the Certificate contains the following exclusions

(GFBR000734-GFBR000739):

EXCLUSIONS

We do not cover Bodily Injury or Property Damage:

. . .

6. Resulting from any obligation we or you may be held liable for by a person not a party to a contract or agreement.

. . .

We do not cover <u>Property Damage</u>:

. . .

3. For loss in excess of $100,000 to property in the care, custody or control of a Protected Person(s) or as to which a

Protected Person(s) is for any purpose exercising physical control.

We do not pay for any damages resulting in personal injury caused by any of the following:

. . .

2. A written or spoken statement that is first made prior to the effective date of this certificate.

142. Under the 1989-1990 Certificate, Catholic Mutual provided claims made coverage for Directors' and Officers' Liability with a retroactive date of July 1, 1982 (GFBR000808; GFBR000618-GFBR000625).

143. The Directors' and Officers' Liability Coverage states, *inter alia*:

Coverage Clause

In consideration of the charges made and to be made to the Society by the Certificate Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, the Society shall pay on behalf of the person or persons, herein individually and collectively referred to as the Protected Party, against Loss, as hereinafter defined, arising from any claim or claims which may be made against the Protected Party, jointly or severally, during a Certificate Year by reason of any Protected Act, as hereinafter defined, performed or omitted solely in their respective management capacities.

Additional Definitions Applying to This Form

A. The term Protected Party shall mean any person serving in the capacity of a Director, Officer, Trustee, Board Member, or Administrator of any official Diocesan Board, Committee, or Council, whether or not such Board, Committee, or Council operates on a full Diocesan wide basis, parish basis, institutional basis, or educational unit basis, all duly created by and under the direct control of the Ordinary of the Diocese.

. . .

D. The term "Protected Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Entity, jointly or severally, or any matter claimed against them solely by reason of their being Directors or Officers of the Entity . . . .

144. The Directors' and Officers' Liability Form contains the following exclusions:

Exclusions

The Society shall not be liable to make any payment in connection with any claim made against a Protected Party:

A. For libel or slander;

B. Based upon or attributable to his or her gaining in fact of any personal profit or advantage to which he or she was not legally entitled;

. . .

J. For Bodily Injury;

K. For Property Damage;

145. Under the 1990-1991 Certificate, Catholic Mutual provided claims made coverage for Directors' and Officers' Liability with a retroactive date of July 1, 1982 (GFBR000697; GFBR000791-GFBR000798).

146. The Directors' and Officers' Liability Coverage states, *inter alia*:

Coverage Clause

In consideration of the charges paid and to be made to us by the Certificate Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, we shall protect

the Protected Party, against Loss, both as hereinafter defined, arising from any claim or claims which may be first made against a Protected Party, jointly or severally, during a Certificate Year by reason of any Protected Act, as hereinafter defined, performed or omitted solely in his or her respective management capacities.

Additional Definitions Applying to This Form

A.   The term Protected Party shall mean any person serving in the capacity of a Director, Officer, Trustee, Board Member, or Administrator of any official Diocesan Board, Committee, or Council, whether or not such Board, Committee, or Council operates on a full Diocesan wide basis, parish basis, institutional basis, or educational unit basis, all duly created by and under the direct control of the Ordinary of the Diocese.

. . .

D.   The term Protected Act shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Entity, jointly or severally, or any matter claimed against them solely by reason of their being Directors or Officers of the Entity.

147.   The Directors' and Officers' Liability Form contains the following

exclusions:

Exclusions

The Society shall not be liable to make any payment in connection with any claim made against a Protected Party:

A.   For libel or slander;

B.   Based upon or attributable to his or her gaining in fact of any personal profit or advantage to which he or she was not legally entitled;

. . .

I.      For Bodily Injury;

J.      For Property Damage;

148.   The Excess Liability Coverage Form follows the terms and conditions of the underlying coverage and (GFBR000638-GFBR000647; GFBR000700-GFBR000707) states, *inter alia*:

COVERAGE

> We agree to pay on your behalf that amount of loss and loss expense resulting from any occurrence which exceeds the amount of loss and loss expense payable by the underlying coverage as shown, but our obligation hereunder shall not exceed the limit of liability stated in Item 4 of the Excess Liability Declarations.

CONDITIONS

> A)    APPLICATION OF UNDERLYING COVERAGE. Except as may be otherwise stated herein, and except with respect to (1) any obligation to investigate or defend any claim or suit, or (2) any obligation to renew, the coverage afforded by this form shall follow the terms and conditions of the underlying coverage as shown.  The coverage provided by this form shall apply only as excess of and after all underlying coverage has been exhausted by the payment of loss.

ADDITIONAL DEFINITIONS

> . . .

> Loss means the sums actually paid or payable as damages in the settlement of satisfaction of a claim(s) for which you are liable either by adjudication or compromise and with our written consent after making proper deduction for all recoveries and salvages.

149.   Pursuant to the Montana Supreme Court decision, the surviving

allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment and do not allege bodily injury, sickness or disease, including death, property damage, personal injury or advertising injury.

150. Catholic Mutual has no duty under the 1989-1991 Certificates to defend or indemnify the St. Labre School, the St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute bodily injury, personal injury, advertising injury or property damage occurring during the coverage period of the 1989-1991 Certificates.

151. To the extent that it is found that the NCT 2005 Suit alleges personal injury as defined in the 1989-1991 Certificates, coverage is excluded because the alleged personal injury arose out of a written or spoken statement first made prior to the effective date of the 1989-1991 Certificates.

152. The 1989-1991 Directors' and Officers' Liability coverage protects persons who are officers and directors who commit a "Protected Act" and only for claims made during the Certificate period.

153. The Montana Supreme Court has held "NCT, as the aggrieved party, would not need to establish any wrongdoing" to prevail on its unjust enrichment. (MSCD ¶ 39.)

154. There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the

St. Labre School, the St. Labre Home, or the Diocese because the allegations of the NCT 2005 Suit do not arise from any claim or claims which were made during the Certificate period and the NCT 2005 Suit does not name nor seek any relief against any person who is covered under the Directors' and Officers' Liability Coverage who is alleged to have committed a "Protected Act" in the NCT 2005 Suit, and because any gains received by St. Labre School, St. Labre Home or the Diocese are a profit or advantage to which he or she was not legally entitled.

155.    There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual, St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

156.    By order and decree herein, all rights and legal relations of the parties hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

**COUNT IX**
**DECLARATORY JUDGMENT**
**(Catholic Mutual -- 1991-1996 Certificates)**

157.    Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

158.    Catholic Mutual has located declarations pages and certain endorsements and certificate forms for the period July 1, 1991 to July 1, 1996

issued to the Roman Catholic Bishop of Great Falls, A Corporation Sole, Great

Falls, Montana (the "1991-1996 Certificates") (GFBR000800-GFBR000910;

GFBR000911-GFBR001010; GFBR001011-GFBR001118; GFBR001119-

GFBR001228; GFBR001229-GFBR001348). Copies of the Declarations Pages

are attached hereto as **Exhibit J (GFBR000800-GFBR000801; GFBR000911-**

**GFBR000912; GFBR001011-GFBR001012; GFBR001119-GFBR001120;**

**GFBR001229-GFBR001230**).

159. The 1991-1993 Certificates provide coverage for "bodily injury,"

"advertising injury," and "property damage" (GFBR000841; GFBR000983) and

state, *inter alia*:

COVERAGE D – GENERAL LIABILITY

We shall pay all sums which you may become legally obligated
to pay as damages arising out of an occurrence resulting in:

1. Bodily Injury, Personal Injury (including Corporal
Punishment)

2. Advertising Injury

3. Property Damage.

We shall pay up to the Limit of Liability for any one occurrence
to which this coverage applies.

160. The 1993-1996 Certificates provide coverage for "bodily injury,"

"advertising injury," and "property damage" (GFBR001078; GFBR001201;

GFBR001321) and state, *inter alia*:

COVERAGE D – GENERAL LIABILITY

We shall pay all sums which you may become legally obligated

to pay as damages arising out of an occurrence during the Certificate Period resulting in:

    1.    Bodily Injury, Personal Injury (including Corporal Punishment)

    2.    Advertising Injury

    3.    Property Damage.

We shall pay up to the Limit of Liability for any one occurrence to which this coverage applies.

161.  The 1991-1993 Certificates contain the following definitions

(GFBR000821-GFBR000825; GFBR000964-GFBR000968):

DEFINITIONS

Advertising Injury – means injury arising out of your advertising activities caused by libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation, and invasion of right of privacy.

Bodily Injury – means physical injury to, sickness or disease sustained by the body of any person, including death at any time resulting from bodily injury. Injury must occur during the certificate period.

Personal Injury - means injury arising out of the following acts if first committed during the certificate period:

1. False arrest, detention, discrimination, false imprisonment or malicious prosecution.

2. Wrongful entry or eviction or other invasion of the right of private occupancy of an occupant.

3. A written or spoken statement injuring a person's reputation or other defamatory written or spoken statements that violate a person's right of privacy.

4. Acts resulting in mental injury, mental anguish, shock, sickness, disability, discrimination and humiliation.

5. Corporal Punishment.

162.   The 1993-1996 Certificates contain the following definitions (GFBR001059-GFBR001063; GFBR001182-GFBR001186; GFBR001302-GFBR001348):

DEFINITIONS

Advertising Injury – means injury arising out of your advertising activities caused by libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation, and invasion of right of privacy.

Bodily Injury – means physical injury to, sickness or disease sustained by the body of any person, including death at any time resulting from bodily injury.  Injury must occur during the certificate period.

Personal Injury - means injury arising out of the following offenses if first committed during the Certificate Period:

1. False arrest, detention, or imprisonment;

2. Malicious prosecution;

3. Wrongful entry into or eviction from, or invasion of the right of private occupancy of real property that a person occupies by or on behalf of its owner or lessor;

4. The publication of written or oral material injuring a person's reputation or other defamatory written or spoken statements that violate a person's right of privacy; or

5. Unlawful discrimination.

163.   The 1991-1996 Certificates contain the following exclusions (GFBR000841-GFBR000846; GFBR000983-GFBR000988; GFBR001078-GFBR001083; GFBR001201-GFBR001206; GFBR001321-GFBR001326):

EXCLUSIONS

We do not cover Bodily Injury or Property Damage:

. . .

> 6. Resulting from any obligation we or you may be held liable for by a person not a party to a contract or agreement.

. . .

We do not cover <u>Property Damage</u>:

. . .

> 3. For loss in excess of $100,000 to property in the care, custody or control of a Protected Person(s) or as to which a Protected Person(s) is for any purpose exercising physical control.

We do not pay for any damages resulting in personal injury caused by any of the following:

. . .

> 2. A written or spoken statement that is first made prior to the effective date of this certificate.

164.   For the period July 1, 1991 to July 1, 1996, Catholic Mutual provided claims made coverage for Directors' and Officers' Liability with a retroactive date of July 1, 1982 (GFBR000801; GFBR000902-GFBR000909; GFBR000912; GFBR000955-GFBR000962; GFBR001012; GFBR001106-GFBR001113; GFBR001120; GFBR001166-GFBR001173; GFBR001230; GFBR001277-GFBR001284).

165.  The Directors' and Officers' Liability Coverage states, *inter alia*:

Coverage Clause

> In consideration of the charges paid and to be made to us by the Certificate Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, we shall protect the Protected Party, against Loss, both as hereinafter defined, arising from any claim or claims which may be first made against a Protected Party, jointly or severally, during a Certificate Year by reason of any Protected Act, as hereinafter defined, performed or omitted solely in his or her respective management capacities.

Additional Definitions Applying to This Form

> A.     The term Protected Party shall mean any person serving in the capacity of a Director, Officer, Trustee, Board Member, or Administrator of any official Diocesan Board, Committee, or Council, whether or not such Board, Committee, or Council operates on a full Diocesan wide basis, parish basis, institutional basis, or educational unit basis, all duly created by and under the direct control of the Ordinary of the Diocese.

> . . .

> D.     The term Protected Act shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Entity, jointly or severally, or any matter claimed against them solely by reason of their being Directors or Officers of the Entity.

166.  The Directors' and Officers' Liability Form contains the following exclusions:

Exclusions

> The Society shall not be liable to make any payment in

connection with any claim made against a Protected Party:

> A.    For libel or slander;
>
> B.    Based upon or attributable to his or her gaining in fact of any personal profit or advantage to which he or she was not legally entitled;
>
> . . .
>
> I.    For Bodily Injury;
>
> J.    For Property Damage;

167.   The Excess Liability Coverage Form follows the terms and conditions of the underlying coverage and states (GFBR000804-GFBR000812; GFBR000915-GFBR000924; GFBR001016-GFBR001025; GFBR001124-GFBR001133; GFBR001234-GFBR001244), *inter alia*:

### COVERAGE

> We agree to pay on your behalf that amount of loss and loss expense resulting from any occurrence which exceeds the amount of loss and loss expense payable by the underlying coverage as shown, but our obligation hereunder shall not exceed the limit of liability stated in Item 4 of the Excess Liability Declarations.

### CONDITIONS

> A)    APPLICATION OF UNDERLYING COVERAGE. Except as may be otherwise stated herein, and except with respect to (1) any obligation to investigate or defend any claim or suit, or (2) any obligation to renew, the coverage afforded by this form shall follow the terms and conditions of the underlying coverage as shown. The coverage provided by this form shall apply only as excess of and after all underlying coverage has been exhausted by the payment of loss.

### ADDITIONAL DEFINITIONS

. . .

> Loss means the sums actually paid or payable as damages in the settlement of satisfaction of a claim(s) for which you are liable either by adjudication or compromise and with our written consent after making proper deduction for all recoveries and salvages.

168. Pursuant to the Montana Supreme Court decision, the surviving allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment and do not allege bodily injury, sickness or disease, including death, property damage, personal injury or advertising injury.

169. Catholic Mutual has no duty under the 1991-1996 Certificates and the excess liability coverage form to defend or indemnify the St. Labre School, the St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving allegations of the Complaint, even if true, do not constitute bodily injury, personal injury, advertising injury or property damage occurring during the coverage period of the 1991-1996 Certificates.

170. To the extent that it is found that the NCT 2005 Suit alleges "personal injuries" as defined in the 1991-1996 Certificates, coverage is excluded because the alleged or "personal injuries" arose out of a written or spoken statement first made prior to the effective date of the 1991-1996 Certificates.

171. The 1991-1996 Directors' and Officers' Liability coverage protects persons who are officers and directors who commit a "Protected Act" and only for

claims made during the Certificate period.

172.    The Montana Supreme Court has held "NCT, as the aggrieved party, would not need to establish any wrongdoing" to prevail on its unjust enrichment. (MSCD ¶ 39.)

173.    There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the St. Labre School, the St. Labre Home, or the Diocese because the allegations of the NCT 2005 Suit do not arise from any claim or claims which were made during the Certificate period and the NCT 2005 Suit does not name nor seek any relief against any person who is covered under the Directors' and Officers' Liability Coverage who is alleged to have committed a "Protected Act" in the NCT 2005 Suit.

174.    There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the St. Labre School, the St. Labre Home, or the Diocese because the 1991-1996 Directors' and Officers' form excludes coverage for bodily injury or property damage or for claims based upon or attributable to a protected party gaining in fact of any personal profit or advantage to which he or she was not legally entitled.

175.    There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual, St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005

Suit, as described above.

176.   By order and decree herein, all rights and legal relations of the parties hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

**COUNT X**
**DECLARATORY JUDGMENT**
**(Catholic Mutual -- 1996-2013 Certificates)**

177.   Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

178.   Catholic Mutual has located declarations pages and certain endorsements and certificate forms for the period July 1, 1996 to July 1, 2013 issued to the Roman Catholic Bishop of Great Falls, A Corporation Sole, Great Falls, Montana (the "1996-2013 Certificates") (GFBR001349-GFBR001475; GFBR001476-GFBR001593; GFBR001594-GFBR001720; GFBR001721-GFBR001847; GFBR001848-GFBR001949; GFBR001950-GFBR002057; GFBR002058-GFBR002231; GFBR002232-GFBR002329; GFBR002330-GFBR002428; GFBR002429-GFBR002525; GFBR002526-GFBR002616; GFBR002617-GFBR002710; GFBR002711-GFBR002826; GFBR002827-GFBR002942; GFBR002943-GFBR003062; GFBR003063-GFBR003161; GFBR003162-GFBR003296).  Copies of the Declarations Pages are attached hereto as **Exhibit K (GFBR001349-GFBR001350; GFBR001476-GFBR001477;**

**GFBR001594-GFBR001596; GFBR001721-GFBR001722; GFBR001848-GFBR001849; GFBR001950-GFBR001951; GFBR002058-GFBR002059; GFBR002232-GFBR002233; GFBR002330-GFBR002331; GFBR002429-GFBR002430; GFBR002526-GFBR002527; GFBR002617-GFBR002620; GFBR002711-GFBR002713; GFBR002827-GFBR002829; GFBR002943-GFBR002945; GFBR003063-GFBR003064; GFBR003162-GFBR003165**).

179.   The 1996-1999 Certificates provide coverage for "bodily injury," "advertising injury," and "property damage" (GFBR001443; GFBR001569.6; GFBR001695.6) and state, *inter alia*:

> COVERAGE D – GENERAL LIABILITY
>
> > We shall pay all sums which you may become legally obligated to pay as damages arising out of an occurrence during the Certificate Period resulting in:
> >
> > > 1.   Bodily Injury, Personal Injury (including Corporal Punishment)
> > >
> > > 2.   Advertising Injury
> > >
> > > 3.   Property Damage
> >
> > We shall pay up to the Limit of Liability of any one occurrence to which this coverage applies.

180.   The 1999-2007 Certificates provide coverage for "bodily injury," "advertising injury," and "property damage" (GFBR001800; GFBR001902; GFBR002010; GFBR002195; GFBR002288; GFBR002387; GFBR002484; GFBR002575) and state, *inter alia*:

> COVERAGE D – GENERAL LIABILITY

We shall pay on your behalf, up to the Limit of Liability shown in the Declarations, all sums which you may become legally obligated to pay as damages arising out of an occurrence during the Certificate Period resulting in:

    1.    Bodily Injury, Personal Injury (including Corporal Punishment)

    2.    Advertising Injury

    3.    Property Damage

We shall pay up to the Limit of Liability for any one occurrence to which this coverage applies.

181. The 2007-2013 Certificates provide coverage for "bodily injury," "advertising injury," and "property damage" (GFBR002668; GFBR002788; GFBR002904; GFBR003022; GFBR003120; GFBR003261) and state, *inter alia*:

COVERAGE D – GENERAL LIABILITY

COVERAGE CLAUSE

We will pay those sums that You become legally obligated to pay as Damages up to the Limit of Liability shown in the Declarations, arising out of an Occurrence during the Certificate Period and in the coverage territory arising from:

    1.    Bodily Injury

    2.    Personal Injury

    3.    Advertising Injury

    4.    Property Damage

182. The 1996-2013 Certificates contain the following definitions (GFBR001424-GFBR001428; GFBR001556-GFBR001560; GFBR001682-GFBR001686; GFBR001782-GFBR001786; GFBR001884-GFBR001888; GFBR001992-GFBR001996; GFBR002177-GFBR002181; GFBR002270-

GFBR002274; GFBR002369-GFBR002373; GFBR002466-GFBR002470;

GFBR002557-GFBR002562; GFBR002651-GFBR002656; GFBR002764-

GFBR002770; GFBR002878-GFBR002884; GFBR002996-GFBR003002;

GFBR003096-GFBR003102; GFBR003237-GFBR003243):

DEFINITIONS

Advertising Injury – means injury arising out of your advertising activities caused by libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation, and invasion of right of privacy.

Bodily Injury – means physical injury to, sickness or disease sustained by the body of any person, including death at any time resulting from bodily injury. Injury must occur during the certificate period.

Personal Injury - means injury arising out of the following offenses, if first committed during the Certificate Period:

1. False arrest, detention, or imprisonment;

2. Malicious prosecution;

3. Wrongful entry into or wrongful eviction from, or invasion of the right of private occupancy of real property that a person occupies by or on behalf of its owner or lessor;

4. The publication of written or oral material injuring a person's reputation or other defamatory written or spoken statements that violate a person's right of privacy; or

5. Unlawful discrimination.

183. The 1996-2005 Certificates (GFBR001443-GFBR001448;

GFBR001569.6-GFBR001569.11; GFBR001695.6-GFBR001695.11;

GFBR001800-GFBR001805; GFBR001902-GFBR001907; GFBR002010;

GFBR002015; GFBR002195-GFBR002200; GFBR002288-GFBR002293;

GFBR002387-GFBR002392) contain the following exclusions:

EXCLUSIONS

We do not cover Bodily Injury or Property Damage:

. . .

6. Resulting from any obligation we or you may be held liable for by a person not a party to a contract or agreement.

. . .

We do not cover <u>Property Damage</u>:

. . .

3. For loss in excess of $100,000 to property in the care, custody or control of a Protected Person(s) or as to which a Protected Person(s) is for any purpose exercising physical control.

We do not pay for any damages resulting in personal injury caused by any of the following:

. . .

2. A written or spoken statement that is first made prior to the effective date of this certificate.

184. The 2005-2006 Certificates (GFBR002484-GFBR002490;

GFBR002575-GFBR002581) contain the following exclusions:

EXCLUSIONS

We do not cover:

. . .

6. Bodily Injury or Property Damage resulting from any obligation we or you may be held liable for by a person not a

party to a contract or agreement.

. . .

We do not cover <u>Property Damage</u>:

. . .

3. For loss in excess of $100,000 to property in the care, custody or control of a Protected Person(s) or as to which a Protected Person(s) is for any purpose exercising physical control.

We do not pay for any damages resulting in personal injury caused by any of the following:

. . .

2. A written or spoken statement that is first made prior to the effective date of this certificate.

185. The 2007-2013 Certificates (GFBR002668-GFBR002677;

GFBR002788-GFBR002797; GFBR002904-GFBR002913; GFBR003022-

GFBR003031; GFBR003120-GFBR003129; GFBR003261-GFBR003270) contain

the following exclusions:

EXCLUSIONS

20. Care Custody and Control

We do not pay for:

Property Damage for loss in excess of $250,000 to non-owned real or personal property in the care, custody or control of a Protected Person(s) or as to which a Protected Person(s) is for any purpose exercising physical control.

. . .

26. Advertising Injury and/or Personal Injury

We do not pay for:

Any Damages from claims for Personal Injury or Advertising Injury caused by any of the following:

> (b) A written or spoken statement that is first made prior to the effective date of this certificate.

> . . .

> (f) Caused by or at the direction of your knowledge that the act would violate the rights of another and would inflict Personal Injury and Advertising Injury.

186.   For 1996-2013 Certificates, Catholic Mutual provided claims made coverage for Directors' and Officers' Liability with a retroactive date of July 1, 1982 (GFBR001350; GFBR001400-GFBR001407; GFBR001477; GFBR001529-GFBR001536; GFBR001596; GFBR001652-GFBR001662; GFBR001722; GFBR001837-GFBR001847; GFBR001849; GFBR001939-GFBR001949; GFBR001951; GFBR002047-GFBR002057; GFBR002059; GFBR002115-GFBR002119; GFBR002087-GFBR002089; GFBR002233; GFBR002325-GFBR002329; GFBR002261-GFBR002265; GFBR002331; GFBR002424-GFBR002428; GFBR002360-GFBR002364; GFBR002430; GFBR002521-GFBR002525; GFBR002527; GFBR002612-GFBR002616; GFBR002618; GFBR002706-GFBR002710; GFBR002712; GFBR002757-GFBR002761; GFBR002828; GFBR002873-GFBR002877; GFBR002944; GFBR002991-GFBR002995; GFBR003064; GFBR003091-GFBR003095; GFBR003163; GFBR003232-GFBR003236).

187.   For the 1996-1998 Certificates, the Directors' and Officers' Liability

Coverage (GFBR001400-GFBR001407; GFBR001529-GFBR001536) states, *inter alia*:

Coverage Clause

> In consideration of the charges paid and to be made to us by the Certificate Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, we shall protect the Protected Party, against Loss, both as hereinafter defined, arising from any claim or claims which may be first made against a Protected Party, jointly or severally, during a Certificate Year by reason of any Protected Act, as hereinafter defined, performed or omitted solely in his or her respective management capacities.

Additional Definitions Applying to This Form

> A. The term Protected Party shall mean any person serving in the capacity of a Director, Officer, Trustee, Board Member, or Administrator of any official Diocesan Board, Committee, or Council, whether or not such Board, Committee, or Council operates on a full Diocesan wide basis, parish basis, institutional basis, or educational unit basis, all duly created by and under the direct control of the Ordinary of the Diocese.

> . . .

> D. The term Protected Act shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Entity, jointly or severally, or any matter claimed against them solely by reason of their being Directors or Officers of the Entity.

188. For the 1996-1998 Certificates, the Directors' and Officers' Liability Form contains the following exclusions:

Exclusions

> The Society shall not be liable to make any payment in connection with any claim made against a Protected Party:
>
> > A.   For libel or slander;
> >
> > B.   Based upon or attributable to his or her gaining in fact of any personal profit or advantage to which he or she was not legally entitled;
> >
> > . . .
> >
> > I.   For Bodily Injury;
> >
> > J.   For Property Damage;

189.   For the 1998-2002 Certificates, the Directors' and Officers' Liability Coverage (GFBR001652-GFBR001662; GFBR001837-GFBR001847; GFBR001939-GFBR001949) states, *inter alia*:

Coverage Clause

> In consideration of the charges paid and to be made to us by the Certificate Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, we shall protect the Protected Party, against Loss, both as hereinafter defined, arising from any claim or claims which may be first made against a Protected Party, jointly or severally, during a Certificate Year by reason of any Protected Act, as hereinafter defined, performed or omitted solely in his or her respective management capacities.

Additional Definitions Applying to This Form

> A.   The term Protected Party shall mean the Certificate Holder or entity(ies) listed on the ledger page(s) of the certificate, whether separately incorporated or not, and any person serving in the capacity of a Director, Officer, Trustee, Board Member, or Administrator of any official Diocesan Board, Committee, or Council, whether or not such Board, Committee, or Council operates on a full Diocesan wide basis,

parish basis, institutional basis, or educational unit basis, all duly created by and under the direct ecclesiastical control of the Ordinary of the Diocese.

. . .

D.      The term Protected Act shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Entity, jointly or severally, or any matter claimed against them solely by reason of their being Directors or Officers of the Entity.

190.   The 1998-2002 Certificates, the Directors' and Officers' Liability Form contains the following exclusions:

Exclusions

The Society shall not be liable to make any payment in connection with any claim made against a Protected Party:

A.      For libel or slander;

B.      Based upon or attributable to his or her gaining in fact of any personal profit or advantage to which he or she was not legally entitled;

. . .

I.      For Bodily Injury;

J.      For Property Damage;

191.   The 2002-2004 Certificates, the Directors' and Officers' Liability Coverage (GFBR002115-GFBR002119; GFBR002325-GFBR002329) states, *inter alia*:

I.      COVERAGE CLAUSE

In consideration of the charges paid and to be made to us by the

Certificate Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, we shall pay on behalf of the Protected Party(ies) against Loss arising from any claim(s) which may be first made against a Protected Party(ies), jointly or severally, during a Certificate Period by reason of any Wrongful Act.

II.    ADDITIONAL DEFINITIONS APPLYING TO THIS FORM

Whenever used in this form,

. . .

C.    Protected Party(ies) shall mean the Certificate Holder or entity(ies) listed on the ledger page(s) of the certificate, whether separately incorporated or not, and any past, present, or future director, officer, trustee, employee, volunteer, or any member of the staff, faculty or any duly constituted committee of the Certificate Holder; and, in the event of the death, incapacity or bankruptcy of a Protected Party(ies), the estate, heirs, legal representatives or assigns of such individual;

. . .

E.    Wrongful Act means any actual or alleged error, misstatement, misleading statement or breach of duty committed after the Retroactive Date herein provided by a Protected Party(ies) solely in his or her capacity as such or while serving as director or trustee of any covered entity at the express direction of the Certificate Holder.

192.    For the 2002-2004 Certificates, the Directors' and Officers' Liability

Form contains the following exclusions:

III.    EXCLUSIONS

(A)    Except for Defense Expenses, we shall not pay Loss for Claims brought about or contributed to in fact . . . (2)  by any Protected Party(ies) gaining any profit, remuneration or

advantage to which such Protected Party(ies) was not legally entitled. For the purposes of determining the applicability of this EXCLUSION (A), no Wrongful Act of any Protected Party(ies) shall be imputed to any other Protected Party(ies). Further, each Protected Party(ies) agrees that, if it is finally established that we have no liability to a Protected Party(ies) for Loss in connection with any Claim by reason of this EXCLUSIONS (A), such Protected Party(ies) will repay us upon demand Defense Expenses paid on behalf of such Protected Party(ies) in connection with such Claim.

(B) We shall not pay Loss, including Defense Expenses, for Claims:

(1) for any actual or alleged bodily injury, advertising injury, personal injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property including loss of use thereof; . . .

193. For 2004-2013 Certificates, the Directors' and Officers' Liability Coverage (GFBR002424-GFBR002428; GFBR002521-GFBR002525; GFBR002612-GFBR002616; GFBR002706-GFBR002710; GFBR002757-GFBR002761; GFBR002873-GFBR002877; GFBR002991-GFBR002995; GFBR003091-GFBR003095; GFBR003232-GFBR003236) states, *inter alia*:

I. COVERAGE CLAUSE

In consideration of the charges paid and to be made to us by the Certificate Holder, and subject to the terms, conditions, exclusions and limitations as herein provided, we shall pay on behalf of the Protected Party(ies) against Loss arising from any claim(s) which may be first made against a Protected Party(ies), jointly or severally, during a Certificate Period by reason of any Wrongful Act.

II.   ADDITIONAL DEFINITIONS APPLYING TO THIS FORM

Whenever used in this form,

. . .

C.   Protected Party(ies) shall mean the Certificate Holder or entity(ies) listed on the ledger page(s) of the certificate, whether separately incorporated or not, and any past, present, or future director, officer, trustee, employee, volunteer, or any member of the staff, faculty or any duly constituted committee of the Certificate Holder; and, in the event of the death, incapacity or bankruptcy of a Protected Party(ies), the estate, heirs, legal representatives or assigns of such individual;

. . .

E.   Wrongful Act means any actual or alleged error, omission, misstatement, misleading statement, or breach of duty committed after the Retroactive Date herein provided by a Protected Party(ies) solely in his or her capacity as such or while serving as director or trustee of any covered entity at the express direction of the Certificate Holder.

194.   For the 2004-2013 Certificates, the Directors' and Officers' Liability

Form contains the following exclusions:

III.   EXCLUSIONS

(A)   Except for Defense Expenses, we shall not pay Loss for Claims brought about or contributed to in fact . . . (2)  by any Protected Party(ies) gaining any profit, remuneration or advantage to which such Protected Party(ies) was not legally entitled.  For the purposes of determining the applicability of this EXCLUSION (A), no Wrongful Act of any Protected Party(ies) shall be imputed to any other Protected Party(ies). Further, each Protected Party(ies) agrees that, if it is finally established that we have no liability to a Protected Party(ies) for Loss in connection with any Claim by reason of this

EXCLUSIONS (A), such Protected Party(ies) will repay us upon demand all Defense Expenses paid on behalf of such Protected Party(ies) in connection with such Claim.

(B) We shall not pay Loss, including Defense Expenses, for Claims:

> (1)　for any actual or alleged bodily injury, advertising injury, personal injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property including loss of use thereof . . .

195.　The 1996-2013 Certificates include an Excess Liability Coverage Form that follows the terms and conditions of the underlying coverage and (GFBR001354-GFBR001363; GFBR001481-GFBR001490; GFBR001600-GFBR001611; GFBR001725-GFBR001737; GFBR001852-GFBR001864; GFBR001956-GFBR001968; GFBR002131-GFBR002143; GFBR002248-GFBR002260; GFBR002335-GFBR002347; GFBR002434-GFBR002448; GFBR002531-GFBR002545; GFBR002624-GFBR002638; GFBR002723-GFBR002735; GFBR002833-GFBR002845; GFBR002949-GFBR002961; GFBR003067-GFBR003079; GFBR003183-GFBR003195) states, *inter alia*:

COVERAGE

> We agree to pay on your behalf that amount of loss and loss expense resulting from any occurrence which exceeds the amount of loss and loss expense payable by the underlying coverage as shown, but our obligation hereunder shall not exceed the limit of liability stated in Item 4 of the Excess Liability Declarations.

CONDITIONS

A)   APPLICATION OF UNDERLYING COVERAGE.
Except as may be otherwise stated herein, and except with
respect to (1) any obligation to investigate or defend any claim
or suit, or (2) any obligation to renew, the coverage afforded by
this form shall follow the terms and conditions of the
underlying coverage as shown.  The coverage provided by this
form shall apply only as excess of and after all underlying
coverage has been exhausted by the payment of loss.

. . .

ADDITIONAL DEFINITIONS

. . .

Loss means the sums actually paid or payable as damages in the
settlement of satisfaction of a claim(s) for which you are liable
either by adjudication or compromise and with our written
consent after making proper deduction for all recoveries and
salvages.

196.   Pursuant to the Montana Supreme Court decision, the surviving

allegations of the NCT 2005 Suit allege constructive trust and unjust enrichment

and do not allege bodily injury, sickness or disease, including death, property

damage, personal injury or advertising injury.

197.   Catholic Mutual has no duty under the 1996-2013 Certificates and the

excess liability coverage form to defend or indemnify the St. Labre School, the

St. Labre Home or the Diocese in the NCT 2005 Suit, because the surviving

allegations of the Complaint, even if true, do not constitute bodily injury, personal

injury, advertising injury or property damage occurring during the coverage period

of the 1996-2013 Certificates.

198. To the extent that it is found that the NCT 2005 Suit alleges "personal injuries" as defined in the 1996-2013 Certificates, coverage is excluded because the alleged "personal injuries" arose out of a written or spoken statement first made prior to the effective date of the 1996-2013 Certificates.

199. Catholic Mutual has no duty under the 1996-2013 Certificates to defend or indemnify the St. Labre School, the St. Labre Home or the Diocese in the NCT 2005 Suit under the Excess Form, because the Excess Liability Supplemental Endorsement excludes coverage for bodily injury, personal injury, and advertising injury.

200. The 1996-2013 Directors' and Officers' Liability coverage protects persons who are officers and directors who commit a "Protected Act" and only for claims made during the Certificate period.

201. The Montana Supreme Court has held "NCT, as the aggrieved party, would not need to establish any wrongdoing" to prevail on its unjust enrichment. (MSCD ¶ 39.)

202. There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the St. Labre School, the St. Labre Home, or the Diocese because the allegations of the NCT 2005 Suit do not arise from any claim or claims which were made during the

Certificate period and the NCT 2005 Suit does not name nor seek any relief against any persons who is covered under the Directors' and Officers' Liability Coverage who is alleged to have committed a "Protected Act" in the NCT 2005 Suit.

203.    There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the St. Labre School, the St. Labre Home, or the Diocese because the 1996-2002 Directors' and Officers' form excludes coverage for bodily injury or property damage.  Catholic Mutual has no duty to indemnify the St. Labre School, the St. Labre Home, or the Diocese because the form excludes indemnification for claims based upon or attributable to a protected party gaining in fact any personal profit remuneration or advantage to which he or she was not legally entitled.  There is no coverage afforded under the Directors' and Officers' form, and therefore Catholic Mutual has no duty to defend or indemnify the St. Labre School, the St. Labre Home, or the Diocese because the 2002-2013 Certificates exclude coverage including a defense for "any actual or alleged bodily injury, advertising injury, personal injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to destruction of any tangible property including loss of use thereof."

204.    There is no coverage afforded under the excess liability supplemental endorsement, and therefore Catholic Mutual has no duty to defend or indemnify

the St. Labre School, the St. Labre Home, or the Diocese because the 1996-2013 Certificates exclude coverage for bodily injury, advertising injury, and personal injury.

205.    There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual, St. Labre School, St. Labre Home, and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

206.    By order and decree herein, all rights and legal relations of the parties hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

## COUNT XI
## DECLARATORY JUDGMENT
### (All Certificates "As Damages")

207.    Catholic Mutual and CRIC re-allege and incorporate by reference all preceding paragraphs as if set forth fully herein.

208.    For all the coverage periods identified in this Complaint for Declaratory Judgment, and for each type of coverage provided, Catholic Mutual and CRIC are only obligated to pay on the insured's behalf sums which the insureds become legally obligated to pay as "damages."

209.    The surviving allegations of the NCT 2005 Suit after the Montana Supreme Court decision allege constructive trust and unjust enrichment and seek

disgorgement or return of money that does not allegedly belong to the Diocese or St. Labre School or St. Labre Home.

210. The certificates issued by Catholic Mutual require Catholic Mutual to indemnify for "damages." The certificates issued by CRIC also require it to indemnify for "damages."

211. The purpose of insurance is to transfer risk of compensatory damages not for disgorgement.

212. It would violate public policy to allow the Diocese or St. Labre School or St. Labre Home to insure against risk of being ordered to disgorge or return money that was not theirs in the first instance.

213. There is an actual, real and substantial controversy of a justiciable nature now existing between Catholic Mutual and St. Labre and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above. There is also an actual, real and substantial controversy of a justiciable nature now existing between CRIC and St. Labre and the Diocese with respect to their conflicting claims regarding the NCT 2005 Suit, as described above.

214. By order and decree herein, all rights and legal relations of the parties hereto should be immediately, definitely, and judicially determined, adjudicated and declared.

## COUNT XII
## DECLARATORY JUDGMENT
### (Loss in Progress/Known Risk)

215. Catholic Mutual re-alleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

216. By its nature, insurance is fundamentally based on contingent risks which may or may not occur.

217. If the insured knows or has reason to know, when it purchases a liability policy that there is a substantial probability that it will suffer or has already suffered a loss, the risk ceases to be contingent and becomes a probable or known loss, which is uninsurable under public policy.

218. On information and belief, and at least since 1984, each of the defendants knew or had reason to know at the time that they purchased the Certificates that there was a substantial probability that loss or liability would ensue due to the claims made by the NCT for which the Defendants are now seeking coverage.

219. As a matter of public policy, the Certificates issued by Catholic Mutual since at least 1984, and possibly earlier depending upon proof, do not afford coverage for any of the allegations of the NCT 2005 Suit following the decision of the Montana Supreme Court since liability, if any, with respect to all of those allegations, the Diocese, St. Labre School, and St. Labre Home knew or had

reason to know of a probable loss.

WHEREFORE, CRIC prays the Court for:

1.     a declaratory judgment that it has no duty under the 1966-1969 CRIC Certificates to defend or indemnify the St. Labre School and St. Labre Home in the NCT 2005 Suit;

2.     a declaratory judgment that it has no duty under 1966-1969 CRIC Certificates to defend or indemnify the Diocese in the NCT 2005 Suit; and

3.     such other relief as the Court may deem just and proper.

WHEREFORE, Catholic Mutual prays the Court for:

1.     a declaratory judgment that it has no duty under all the Certificates to defend or indemnify the St. Labre School and St. Labre Home in the NCT 2005 Suit;

2.     a declaratory judgment that it has no duty under all the Certificates to defend or indemnify the Diocese in the NCT 2005 Suit; and

3.     such other relief as the Court may deem just and proper.

DATED this 4th day of November, 2014.

/s/  Bradley J. Luck
Attorneys for Plaintiffs The Catholic Mutual
   Relief Society of America and The Catholic
   Relief Insurance Company of America